**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GREGORY WALTERS, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**FAMOUS TRANSPORTS, INC., ET AL.,**<br><br>Defendants. | Case No. 4:19-cv-08016-YGR<br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 36 |

Plaintiffs Gregory Walters, and Christi Walters bring this putative class-action lawsuit against defendants Famous Transports, Inc. ("Famous"), Panther II Transportation, Inc. ("Panther II"), ArcBest Logistics, Inc. ("ArcBest Logistics"), and ArcBest Corporation ("ArcBest", and collectively, the "ArcBest entities") for failure to provide (1) required meal periods and (2) required rest periods; failure to pay (3) overtime wages, (4) minimum wage, and (5) all wages due to discharges or quitting employees; (6) failure to maintain records; (7) failure to provide accurate itemized statements; (8) failure to indemnify employees for necessary expenditures incurred in the discharge of duties; (9) unlawful deductions from wages;[1] (10) breach of contract; (11) breach of covenant of good faith and fair dealing; and (12) unfair and unlawful business practices in violation of the California Unfair Competition Law ("UCL") (Dkt. No. 1-1 (Class Action Complaint ("CAC")) ¶¶ 22-85.) Defendants removed the case to this Court on December 6, 2019. (Dkt. No. 1 ("Removal").)

Now before the Court is defendants Panther II's, and the ArcBest entities' (collectively, the "moving defendants") motion to transfer venue to the Northern District of Ohio.[2] (Dkt. No. 36.)

---

[1] Plaintiffs allege violations of California Labor Code §§ 201, 202, 203, 221, 222.5, 223, 226, 226.7, 400-410, 510, 512, 1174, 1194, 1197, 1198, and 2802, as well as violation of Industrial Welfare Commission ("IWC") Wage Order No. 9-2001 §§ 3, 4, 7, 8, 11, and 12.

[2] The hearing was originally vacated due to General Order 72, which vacated all oral arguments in light of the ongoing coronavirus (COVID-19) pandemic. The Court has determined that the motion is appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. *See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 728-29 (9th Cir. 1991).

Having carefully considered the pleadings and the papers submitted, and for the reasons set forth more fully below, the Court hereby **GRANTS** the motion to transfer venue.[3]

## I. LEGAL STANDARD

Under 28 U.S.C. section 1404(a), a district court has discretion to transfer an action to another forum. That statute provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

In other words, section 1404(a) permits transfer to "any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine Const. Co. v. U.S. Dist. Court*, 571 U.S. 49, 59 (2013). Forum selection clauses may be enforced through a motion to transfer under section 1404(a). *Id.*

Section 1404(a) "does not condition transfer on the initial forum's being 'wrong' . . . [a]nd it permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine Const. Co., Inc. v. United States District Court*, 571 U.S. 49, 59 (2013) ("*Atlantic Marine*"). Importantly, the moving party carries the burden of showing that the transferee district is the more appropriate forum. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000).

Courts considering transfer must first determine whether the action could have been brought in the target district in the first instance. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). An action could have been brought in any court that has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and where venue would have been proper. *See id*. Here, the moving defendants contend, and plaintiffs do not appear to dispute, that this action could have been brought in the Northern District of Ohio. The moving defendants further aver that a forum selection clause requires that the venue be transferred to the Northern District of Ohio – which plaintiffs reject.

---

[3] To expedite the issuance of this order, the Court assumes familiarity with the underlying facts and background of this matter.

2

1  "In the typical case not involving a forum-selection clause, a district court considering a [section] 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atlantic Marine*, 571 U.S. at 62. If the action could have been brought in the target district, courts then undertake an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)) (internal quotations omitted). Relevant factors the Court may consider include: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).[4]

"[T]he calculus changes . . . when the parties' contract contains a valid forum selection clause . . . ." *Atlantic Marine*, 571 U.S.at 63. "[A] valid forum selection clause should be given controlling weight in all but the most exceptional cases," and the "plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted," based upon public interest factors. *Id*. (citation and brackets omitted). Public interest factors to be considered include relative court congestion, local interest in the controversy, and familiarity with the applicable law. *Id*. at 62 n.6.

II. **ANALYSIS**

Here, the moving defendants aver that transfer is appropriate under a forum selection clause in the relevant contractual agreement. Alternatively, the moving defendants contend that transfer is warranted under the relevant factors to be considered under a section 1404(a) analysis. The Court addresses each in turn below.

---

[4] This list is non-exclusive, and courts may consider other factors. *See Williams v. Bowman*, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001) (noting that this list of factors "does not exhaust the possibilities" and highlighting differing combinations of factors used by courts in conducting this analysis).

3

**A.　　Forum Selection Clause**

The moving defendants move upon an Independent Contractor Operating Agreement ("Operating Agreement") that was in effect between Famous and Panther II. (Dkt. No. 36-1 at 6-40.) Specifically, the Operating Agreement contains a forum selection clause, which states:

> ANY CLAIM OR DISPUTE ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT OR OTHERWISE WITH RESPECT TO THE OVERALL RELATIONSHIP BETWEEN THE PARTIES . . . SHALL BE BROUGHT EXCLUSIVELY IN STATE OR FEDERAL COURTS SERVING MEDINA COUNTY, OHIO.

(*Id.* at 18 (emphasis in original).)

Defendants aver that plaintiffs are bound by the forum selection clause under "direct benefits estoppel." *See Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1180 (9th Cir. 2014). "Direct benefits estoppel holds a nonsignatory to a clause in a contract if it knowingly exploits the agreement containing the clause." *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 291 (5th Cir. 2015) (quotations omitted). Under this theory, a non-signatory to a contract may be bound by that contract's forum selection clause if the non-signatory seeks to enforce terms of the contract, asserts claims that must be determined by reference to that contract, or knowingly seeks and obtains direct benefits from the contract. *Id.* The moving defendants highlight that plaintiffs' allegations (i) were based on the Operating Agreement (*i.e.* mileage compensation), and (ii) included a joint employment theory that must be determined by reference to the Operating Agreement. (*See* Dkt. No. 33, ¶¶ 11-12, 68, 75). In short: because plaintiffs' claims as alleged cannot be resolved without reference to the contract, they are estopped from avoiding the reach of the forum selection clause. *See In re Lloyds Register N. Am., Inc.*, 780 F.3d at 291; *JH Portfolio Debt Equities, LLC v. Garnet Capital Advisors, LLC*, No. 2:17-cv-08839-CAS(JCx), 2018 WL 6112695, at *5 (C.D. Cal. Mar. 16, 2018) ("non-signatory party is bound by a forum selection clause when its alleged *conduct* is closely related to the contract.") (emphasis added).

Plaintiffs counter that they are not bound to the forum selection clause and are third-party beneficiaries. They do not persuade. Here, based on the allegations in the operative complaint, plaintiffs have invoked benefits that derive from the Operating Agreement and resolution of the claims must also be determined by reference to the Operating Agreement. Under the theory of

4

"direct benefits estoppel," this is enough to estop plaintiffs from avoiding the reach of the Operating Agreement's forum selection clause.

Because plaintiffs are otherwise bound by the forum selection clause, it must control unless plaintiffs can show enforcing the clause "clearly would be unreasonable and unjust, or the clause was invalid for reasons such as fraud or overreaching." *Aimsley Enters., Inc. v. Merryman*, No. 19-cv-02101-YGR, 2020 WL 1677330, at *5 (N.D. Cal. Apr. 6, 2020) (quotations omitted). "[A] party seeking to avoid enforcement of the forum selection clause under the [fraud and overreaching] exception must first show that the inclusion of the clause itself into the agreement was improper; it is insufficient to allege that the agreement as a whole was improperly procured." *LaCross v. Knight Transp., Inc.*, 95 F.Supp.3d 1199, 1204 (C.D. Cal. 2015).

Here, the crux of this issue turns on whether the enforcement of this forum selection clause would contravene California's public policy in retaining jurisdiction over cases under the California Labor Code – specifically, to retain cases involving an employee who "primarily resides and works in California." Cal. Lab. Code § 925. Plaintiffs concede that section 925 "does not directly bar the application of a forum selection clause in the case of [p]laintiffs, who reside in another state," but that it "clearly manifest[s] . . . strong public policy concerns and would likely to apply to many if not all of the putative class members [d]efendants have identified as California residents." (Dkt. No. 38 at 15.) In response, the moving defendants highlight that the overwhelming majority of putative class members including the named plaintiffs are not residents of California, and that the record shows that the named plaintiffs only drove a fraction of their miles in California. (Dkt. No. 39 at 10 (citing (Dkt. No. 36-3, ¶ 10)).) Thus, the moving defendants aver that no strong public policy bars enforcement of the forum selection clause here.

Here, while some putative class members are California residents, the overwhelming majority including the named plaintiffs are not. At times, such a situation would create a strong public policy dilemma. However, the Court need not definitively resolve this dispute, because even assuming that the forum selection clause is *not* enforceable due to California's strong public policy in retaining jurisdiction over labor disputes under its codes and statutes, the relevant factors under section 1404(a) overall weigh in favor of transfer to the Northern District of Ohio.

**B.     Section 1404(a) Factors**

As noted, the relevant factors to consider under section 1404(a) include: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *Vu*, 602 F. Supp. 2d at 1156. Thus:

(1) Plaintiff's Choice of Forum: "Although great weigh is generally accorded plaintiff's choice of forum, when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight." *Hendricks v. StarKist*, Case No. 13-cv-729-YGR, 2014 WL 1245880, at *2 (N.D. Cal. Mar. 25, 2014) (citing *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987)). *See also Smith v. Oakley Transp., Inc.*, No. 19-cv-05854-EMC, 2020 WL 563076, at *2 (N.D. Cal. Jan. 30, 2020); *Parr v. Stevens Transport, Inc.*, No. C 19-02610- WHA, 2019 WL 4933583, at *3-4 (N.D. Cal. Oct. 7, 2019); *Johns v. Panera Bread Co.*, No. 08-1071 SC, 2008 WL 2811827, at *3 (N.D. Cal. July 21, 2008). However, in class actions, courts have still given some deference to the named plaintiff's choice of forum where the plaintiff lived in the transferor district and the events at issue occurred in the transferor district. *Hendricks*, 2014 WL 1245880 at *2-3.

Here, neither of the named plaintiffs are residents of California and only a small percentage of the potential class members are California residents, suggesting that this factor's weight is minimal. Of the 2,489 potential class members identified, only 69 individuals (2.8%) are California residents. Meanwhile, there are 180 Ohio residents (7.2%) in the proposed putative class, and the state with the largest share, Florida, has 320 residents (12.9%) in the class. Of course, plaintiffs' contacts with California are not insubstantial where plaintiffs did perform some of their work in this state, but plaintiffs do not and cannot show that this is a substantial amount of the total share of their work, and further fail to dispute that the relevant policies that underly the allegations were created and implemented outside of this forum. *See Parr*, 2019 WL 4933583 at *3 ("[T]here is some measure of truth in this observation but the numbers are so lopsided that, even allowing for some error, the trucking companies' point deserves weight. These numbers show a significant portion of potential class members reside . . . not [in] California.").

1    Accordingly, plaintiffs' choice of forum is entitled little to no deference.

2    (2) <u>Convenience of the Parties</u>: Here, at the time of the filing of the motion, plaintiffs

3    resided in Oklahoma. (Dkt. No. 36 at 28.)[5] Whereas defendants are mostly located in the

4    Midwest region of the United States: Panther II in Ohio; Famous in Michigan; and ArcBest

5    entities in Arkansas. (*Id.*) The moving defendants also highlight that of the identified potential

6    class members, more than 75% live east of the Mississippi river. (Dkt. No. 39 at 12.) On a purely

7    geographic and mileage basis, Ohio is the closer forum for the named parties than is the state of

8    California, and Ohio is further overwhelmingly more convenient to potential class members than

9    is California. Plaintiffs' arguments that the San Francisco region is home to several large airports

10   for the convenience of the parties do not persuade, where Cleveland is also home to a large

11   international airport. On this basis, this factor weighs in favor of Ohio over California.

12   (3) <u>Convenience of the Witnesses</u>: For similar reasons, this factor also weighs in favor of

13   Ohio. The moving defendants "identified the names, relevancy, and location of [witnesses] with

14   personal knowledge of its policies affecting truck drivers." *Parr*, 2019 WL 4933583, at *3.

15   Plaintiffs' arguments that the Court should not consider these individuals because they are

16   employed by the defendants has some merit. However, as explained in *In re Funeral Consumers*

17   *Antitrust Litig.*, No. C 05-01804 WHA, 2005 WL 2664362, at *4 (N.D. Cal. Sept. 23, 2005), the

18   burdens placed on a witness do not disappear because they happen to be employed by a party:

19   "Even where a witness is an employee of a party and will be paid, the disruption is still a hard fact.

20   The expenses of transportation, the housing and meals, even if borne by a party, are nonetheless

21   authentic outlays." *Id.* Several other courts in this district have recognized that when the interests

22   of a defendant's employee witnesses favor transfer, at a minimum, those interests should be

23   considered. *Airwair Int'l, Ltd. v. Cels Enters., Inc.*, No. C-13-4312 EMC, 2014 WL 988752, at *1

24   (N.D. Cal. Mar. 10, 2014); *Herrera v. Command Sec. Corp.*, No. C-12-1079 EMC, 2012 WL

---

[5] That a plaintiffs' counsel is located in California has no bearing on the transfer analysis. *See Kysone v. Regis Corp.*, No. 14-cv-01410-WHO, 2014 WL 2959483, at *4, n.1 (N.D. Cal. Jun. 30, 2014); *Zimpelman v. Progressive N. Ins. Co.*, No. C-09-03306-RMW, 2010 WL 135325, at *1 (N.D. Cal. Jan. 8, 2010).

7

6652416, at *5 (N.D. Cal. Dec. 20, 2012). Thus, the Court considers witnesses employed by the defendants in this overall determination of convenience of the witnesses.

Further, plaintiffs' attached documents – two bills of laden – do not alter the Court's conclusion. Plaintiffs have identified two potential witnesses, but plaintiff does not demonstrate that these witnesses still reside in California, or even if they have any details to share regarding plaintiffs' work in California. Plaintiffs' "lack of specificity does little to show that witness convenience favors California." *Parr*, 2019 WL 4933583, at *3. *See also Russell v. Werner Enterprises, Inc.*, No. C 14-3839 PJH, 2014 WL 4983747, at *2 (N.D. Cal. Oct. 6, 2014) (rejecting plaintiff's identification of "thousands of nonparty Californians 'who observed drivers when their trucks were stopped and have material testimony on that point'"); *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014) (rejecting plaintiff's reliance on "unidentified, hypothetical witnesses"); *Gupta v. Wipro Ltd.*, No. 5:16-CV-05283-EJD, 2017 WL 1113316, at *3 (N.D. Cal. Mar. 24, 2017) ("However, of the individuals that are listed as working in California, Plaintiff provides no explanation as to who they are, what their anticipated testimony would be, or how such testimony would be relevant to this case.").

Accordingly, this factor weighs in favor of Ohio over California.

(4) <u>Ease of Access to the Evidence</u>: In general, while "the ease of electronic discovery reduces the importance of this factor, costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored." *Schlesinger v. Collins*, No. 19-cv-03483-EMC, 2019 WL 4674394, at *4 (N.D. Cal. Sept. 25, 2019). However, where financial and administrative records that are relevant to this action are stored electronically, courts have found that this factor weighs neutrally. *See Parr*, 2019 WL 4933583 at *3 ("As to ease of access to evidence, this factor weighs neither for nor against transfer. Stevens Transport stores the financial and administrative records that are relevant to this action electronically . . . So, there is little burden to transport any evidence to this district.").

Here, defendants have demonstrated that the majority of records and relevant policies in this matter are stored electronically either in Ohio with Panther II, or in Michigan with Famous. Thus, while some costs may be lessened if this action occurred in Ohio, the burden of producing

the evidence in this forum as opposed to Ohio is minimal. Accordingly, this factor weighs neutrally between Ohio and California, or weighs slightly in favor of Ohio over California.

(5) <u>Familiarity of Each Forum with the Applicable Law</u>: On a base level, this Court is likely more familiar with the nuances of California law than would be a federal court in another state. However, "[a]ssuming for argument's sake that at least some aspects of [plaintiffs'] claims or the remedies sought would be decided under California law, even if this case is transferred to [Ohio], the court there is equally capable of determining and applying the appropriate state law." *Burke v. USF Reddaway, Inc.*, No. 2:12-cv-02641-KJM, 2013 WL 85428, at *6 (E.D. Cal. Jan. 8, 2013). Plaintiffs do not identify any complex issues in this action or unique mechanisms inherent to this Court that would suggest that his case is more suitable for this Court to handle over a federal court in another state. Indeed, even assuming there was a complex issue that required resolution of a novel issue of California law, the Sixth Circuit is capable of certifying a question to the California Supreme Court just as the Ninth Circuit can so do. *Parr*, 2019 WL 4933583, at *4 (citing Cal. Rule of Court 8.548). Accordingly, this factor weighs neutrally between Ohio and California, or weighs slightly in favor of California over Ohio.

(6) <u>Feasibility of Consolidation with Other Claims (Judicial Efficiency)</u>: Plaintiffs aver that this Court will have already made "several rulings by the conclusion of this motion and is familiar with the underlying facts of this matter" and that transfer of the case at this stage will negate these efficiencies. (Dkt. No. 38 at 24-25.)

Plaintiffs do not persuade. Here, other than this Order, the Court has issued only one substantive ruling on a prior motion to remand, in which the Court denied the motion. (Dkt. No. 23.) The Court has otherwise not undertaken any case management conference or even met with the parties. Plaintiffs' reliance upon *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012, 1039 (D. Or. 2015), does not compel a different result where the Court here has had minimal interaction with this action, and defendants otherwise filed their motion to transfer venue at the first available opportunity. *Id.* at 1036 (rejecting change of venue after a later motion to dismiss, stating that the only claims remaining were the "same claims that the [p]laintiff has brought since the beginning of the action . . . . [and the defendants'] argument as to why a change of venue is

suddenly necessary is not persuasive").

The moving defendants do not otherwise show that there is judicial efficiency to be gained for a transfer from California to Ohio. Accordingly, this factor is neutral between Ohio and California.

(7) <u>Local Interest in the Controversy</u>: Here, California has some local interest in the application of its labor laws as to California residents. But, such an interest is not absolute, nor is it particularly significant in this case. This is so where the named plaintiffs are not California residents, and less than 3% of the entire class are California residents. Indeed, if a state's interest in resolving employment disputes for work that occurs inside its territorial limits is enough to overcome the other convenience factors, "then every nationwide trucking company would find themselves in all fifty states defending similar lawsuits." *Parr*, 2019 WL 49334583, at *4.

Moreover, plaintiffs' arguments that Ohio citizens have little interest in this case and that they should be not be imposed upon to be jurors for this matter do not persuade. Here, Panther II is a company with its headquarters in the state of Ohio. In similar circumstances, courts have noted that there is in fact a local interest in of citizens in deciding matters pertaining to businesses that are headquartered in the state. *See Rabinowitz v. Samsung Elecs. Am., Inc.*, No. 14-cv-00801-JCS, 2014 WL 5422576, at *7 (N.D. Cal. Oct. 10, 2014) (agreeing that another forum had a substantial interest in deciding controversies involving businesses headquartered there and that employed a substantial number of its citizens); *Bloom v. Express Servs.*, No. C11-00009-CRB, 2011 WL 1481402, at *5-6 (N.D. Cal. Apr. 19, 2011) (stating that another forum had a more substantial interest in the controversy because it had "an interest in deciding controversies involving businesses headquartered there, and that employ a substantial number of its citizens" (citing *Skyriver Tech. Sol'ns, LLC v. OCLC Online Computer Library Ctr., Inc.*, No. C10-03305 JSW, 2012 WL 4366127, at *5 (N.D. Cal. Oct. 28, 2010)).)

Accordingly, this factor weighs in favor of Ohio over California.

(8) <u>Relative Court Congestion</u>: Finally, the Court concludes that this factor weighs in favor of a transfer to Ohio. As the moving defendants point out, and plaintiffs do not dispute, judges in the Northern District of California carry a heavier workload than do judges in the Northern

District of Ohio. As of December 31, 2019, the Northern District of California had 854 pending actions per judgeship, while the Northern District of Ohio had 641 pending actions per judgeship. *See Federal Court Management Statistics as of December 31, 2019*, available at https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2019 (last visited March 20, 2020). Additionally, the Northern District of California had 592 weighted filings per judgeship while the Northern District of Ohio had 451 weighted filings per judgeship, the median time for disposition of civil cases was 12.4 months in the Northern District of California and 10.4 months in the Northern District of Ohio, and the median time to trial was 22.3 months in the Northern District of California and 22.0 months in the Northern District of Ohio. *Id.* Accordingly, this factor weighs in favor of Ohio over California.

Balance of Factors: While some of the factors here weigh neutrally between Ohio and California, most of the remaining factors weigh in favor of transfer to Ohio. Thus, the Court concludes that transfer to the Northern District of Ohio is appropriate.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to transfer venue to the Northern District of Ohio. The Clerk of the Court is directed to transfer this matter to United States District Court for the Northern District of Ohio.

This Order terminates Docket Number 36.

**IT IS SO ORDERED**.

Dated: September 23, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

11